UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

RICKY L. ROBERTSON,                     )
    Plaintiff,                          )
                                        )
v.                                      )       Case No. 4:14-cv-35
                                        )       (Mattice/Carter)
CAROLYN W. COLVIN                       )
Commissioner of Social Security         )
    Defendant                           )

REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of the plaintiff's Motion for Summary Judgment (Doc. 18) and defendant's Motion for Summary Judgment  (Doc. 20).

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(I) and 423.

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was born in 1962 and was 51 years old on the date of his second administrative hearing.   He went to the Ninth grade but had special education classes in math and English (Tr. 44-45). He has past relevant work as a brake part assembler, roofer and delivery truck driver (Tr. 29).

1

<u>Claim for Benefits</u>

In May 2011, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (Act), 42 U.S.C. §§ 401-434 (Tr. 195-96).[1] Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration ("SSA"). Plaintiff's claim was denied initially and on reconsideration (Tr. 108-10). On August 6, 2012, an ALJ issued a decision finding that Plaintiff was not under a "disability" as defined in the Act (Tr. 114-22). After Plaintiff requested review, the Appeals Council for the Social Security Administration remanded the case to the ALJ for further consideration of medical opinion evidence (Tr. 128-30).

On January 16, 2014, following a supplemental hearing, an ALJ found that Plaintiff was not under a "disability" as defined in the Act (Tr. 20-31). On May 1, 2014, SSA's Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the final decision of the Commissioner. Plaintiff timely commenced this appeal in the United States District Court for the Eastern District of Tennessee to request this Court to review the decision of the Commissioner.

<u>Standard of Review - Findings of the ALJ</u>

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42

---

1 Plaintiff previously applied for disability insurance benefits and was denied in 2004 (Tr. 221). That determination became administratively final and is not subject to judicial review. *See* 20 C.F.R. §§ 404.921, 404.987-.989, 416.1421, 416.1487-.1489.

U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a prima facie case she cannot return to her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which the claimant can perform considering her age, education and work experience. *Richardson v. Secretary v. Secretary of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review to be applied by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side of the issue, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for the Commissioner's merely because substantial evidence exists in the record to

3

support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary of Health & Human Servs.*, 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant did not engage in substantial gainful activity since April 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: discogenic back disorder, a soft tissue injury of the left thigh, mood disorder and generalized anxiety disorder (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he requires the flexibility to alternate between sitting and standing every hour during the work period. He should avoid all work hazards due to his medications. He cannot climb ladders, ropes or scaffolds. He can tolerate frequent interpersonal contact with coworkers and the public but should avoid any production rate pace work as you might find on an assembly line.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on _____ __, 1962 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a limited education and is able to communicate in English (20 CFR 404.1564).

4

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, at any time from April 1, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 22-31).

<u>Issues Raised</u>

1.  The ALJ erred in evaluating Plaintiff's subjective complaints.

2.  The ALJ erred in not giving proper weight to the opinions of Dr. Cintron and Dr. Hazlewood.

3.  The ALJ erred in the weight he gave to Plaintiff's significant non-exertional impairments.

<u>Relevant Facts</u>

Plaintiff's medical treatment is set forth in detail in the ALJ's Administrative Decision (Tr. 22-29) and in Plaintiff's memorandum. I will not repeat it here but will refer to relevant portions of it in the analysis section.

<u>Analysis</u>

After considering all the evidence, the ALJ found Plaintiff had severe impairments that included discogenic back disorder, a soft tissue injury of the left thigh, mood disorder, and generalized anxiety disorder (Tr. 22). The ALJ determined that these impairments impacted Plaintiff's ability to perform basic work activities, but Plaintiff retained the residual functional

5

capacity ("RFC") to perform medium work as defined in the regulations,[2] except that he required the flexibility to alternate between sitting and standing every hour during the work period (Tr. 24). The ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds and should avoid all work hazards due to his medications (Tr. 24). The ALJ also found that Plaintiff could tolerate frequent interpersonal contact with coworkers and the public, but should avoid any production rate pace work as found on an assembly line (Tr. 24). Given these limitations, the ALJ determined that Plaintiff could perform work that existed in significant numbers in the national economy, including work as a bagging salvage, garment sorter, and cleaner (Tr. 30).

Plaintiff raises three issues which challenge the ALJ's RFC finding. Plaintiff argues that: 1) the ALJ erred in evaluating his subjective complaints; 2) the ALJ did not give appropriate weight to the opinions of his treating physicians: and 3) the ALJ did not account for his mental limitations. Because I agree with the arguments made by the Commissioner, I conclude, for the following reasons, that the ALJ properly considered the evidence in the record and substantial evidence supports the ALJ's findings.

### 1. Plaintiff's Subjective Complaints.

In assessing Plaintiff's RFC, the ALJ considered the credibility of Plaintiff's subjective complaints and alleged limitations (Tr. 24-28). *See* 20 C.F.R. § 404.1529. The ALJ acknowledged that Plaintiff had severe impairments that could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible (Tr. 26). An ALJ's credibility determination is entitled to "great weight and deference" and the review is limited to determining

---

2 Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

6

whether the ALJ's reasons for discrediting the allegations are reasonable and supported by substantial evidence in the record. *Id.*

Plaintiff argues that because there was "objective medical evidence" supported by medically acceptable clinical and laboratory diagnostic techniques, it was error, to reject Plaintiff's allegations of pain (Doc. 19, Plaintiff's Brief, pp. 18-20). However, the ALJ considered and discussed a number of factors in discounting his subjective complaints of disabling pain. First, the ALJ considered that Plaintiff's allegations of disabling pain were not supported by the objective medical evidence (Tr. 24). Although not determinative of credibility, the lack of objective medical evidence supporting a claimant's alleged limitations is one factor an ALJ may consider. *See* 20 C.F.R. § 404.1529(a); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (unpublished).

The ALJ acknowledged that Plaintiff injured his back in February 2009, but found that the clinical and diagnostic evidence did not show a debilitating impairment (Tr. 24, 360, 435). The ALJ noted an MRI in November 2009 showed some spondylitic changes and a disc protrusion at L5-S1, but was otherwise unremarkable (Tr. 24, 435, 574). An electromyogram ("EMG") in December 2009 was normal (Tr. 24, 361). The consulting neurosurgeon, Dr. Gregory Lanford, M.D., stated he found no reason to restrict Plaintiff's activities (Tr. 24, 361).

The ALJ noted Plaintiff's physical examinations were generally unremarkable, revealing occasional lumbar spasms, occasional numbness and tingling in the left foot, normal strength and a good range of motion in the lower extremities, but no evidence of ongoing nerve impingement in Plaintiff's spine (Tr. 25, 431-436, 509, 529-30, 572-73, 584-94). Less than a year after Plaintiff's back injury, Dr. Jeffrey Hazlewood, M.D., opined he could work a regular job with no

7

permanent restrictions (Tr. 25, 427-31). Plaintiff was upset with this because he could not find work, but Dr. Hazlewood noted it appeared Plaintiff could not find a job because of his education level and Dr. Hazlewood referred Plaintiff to vocational rehabilitation (Tr. 428).

The ALJ further considered that Plaintiff sustained an injury to his legs in July 2010, but x-rays were negative and he was assessed with only a contusion and right ankle sprain (Tr. 25, 386-402, 412). After that time, Plaintiff's physical examinations showed some mild atrophy of the left quadriceps, but were otherwise unchanged with a good range of motion and normal motor strength (Tr. 25, 421-37, 449-52, 529-30, 580-604). In addition, the ALJ noted that an MRI of Plaintiff's lumbar spine in September 2012 showed little change from the previous scan (Tr. 25, 577).

Along with the clinical and diagnostic findings, the ALJ also considered that Plaintiff received routine, conservative care for his impairments (Tr. 24). An ALJ may consider the treatment an individual has had and whether the treatment is indicative of disability. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 473 (6th Cir. 2014); Social Security Ruling (SSR) 96-7p ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints...."). Here, the ALJ noted that Plaintiff received treatment primarily in the form of prescription medication (Tr. 24, 413-14, 421-37, 449-52, 529-30, 580-604). Plaintiff's back impairment did not require surgical intervention (Tr. 24, 361). The ALJ also noted that Dr. Hazlewood prescribed physical therapy, but Plaintiff discontinued physical therapy after five sessions with no reported improvement (Tr. 24, 363-71). Plaintiff requested a transcutaneous electrical nerve stimulation ("TENS") unit in March 2013, and

received one in May 2013 (Tr. 25, 580, 390).  The ALJ noted that Plaintiff also requested a cane, but Dr. Hazlewood declined to prescribe one (Tr. 26, 45, 584).

Next, the ALJ found evidence of noncompliance.  This suggested that Plaintiff's symptoms were not as severe as alleged (Tr. 27).  An ALJ may consider noncompliance with treatment as a credibility factor.  *See Ranellucci v. Astrue*, No. 3:11-cv-00640, 2012 WL 4484922, *10 (M.D. Tenn., Sept. 27, 2012) (citing *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001)).  The ALJ noted that the record contained periods when Plaintiff did not take pain medication as prescribed (Tr. 27).  As the Commissioner notes, in January 2010, Plaintiff rated his pain a 6 out of 10 but stated that he had not taken pain medication for 3 or 4 days (Tr. 27, 433).  Although Plaintiff was not taking his prescribed medications and should have been negative for opioids, a urinary drug screen ("UDS") was positive for both opioids and marijuana (Tr. 27, 433).  The following month, a UDS was barely positive for his prescribed medication and was again positive for marijuana (Tr. 27, 431).  Plaintiff inconsistently told Dr. Hazlewood that he has not taken any medication and told the drug screen collector that he took his medication the day before (Tr. 431).  Dr. Hazlewood informed Plaintiff that at one point he did have radiculopathy but now this seems to have resolved so he would no longer prescribe narcotic medication.  Plaintiff became upset and said he would "just have to get it off the street" (Tr. 27, 431-32).  This evidence does not bolster Plaintiff's credibility.  *See Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 528 (6th Cir. 2006) (credibility factors considered by the ALJ included drug-seeking behavior); *Hayes v. Astrue*, No. 3:10–CV–090, 2011 WL 1188510, *7 (E.D. Tenn. Mar. 28, 2011) (evidence of drug-seeking behavior was relevant and abundantly supported by substantial evidence of record).

9

Further, when he was compliant with treatment, Plaintiff reported significant relief of his symptoms. The ALJ noted that Plaintiff was stable on medications and he reported that joint injections helped tremendously, providing relief for weeks at a time (Tr. 27, 421-37, 509, 529, 572-73, 590). Additionally, Plaintiff consistently reported that medication helped him be independent with activities of daily living, sleep better, be more active, do household chores, and have a better quality of life (Tr. 27, 423-27, 529, 580, 584). Plaintiff also reported that his TENS unit helped with pain control (Tr. 27, 56-57, 587, 590). While Plaintiff may have experienced some residual symptoms, the documented effectiveness of his treatment was inconsistent with the debilitating degree of limitations alleged. *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir.1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)); 20 C.F.R. § 404.1529(c)(3)(iv) (ALJ may consider effectiveness of medication to control symptoms).

Next the ALJ considered that the record contained several inconsistencies that reflected poorly on Plaintiff's credibility. For instance, Plaintiff testified he did not have surgery on his back because he waited too long and his ruptured disc had healed over (Tr. 77). However, the ALJ found no support for this assertion in the medical record (Tr. 24). Rather, the medical record indicated that Plaintiff did not have an operative problem (Tr. 24, 361). Similarly, although Plaintiff testified to significant balance problems, physical examinations revealed no balance problems and Plaintiff generally displayed a normal non-antalgic gait (Tr. 25, 427-31). An ALJ may find an individual not credible when, among other reasons, the allegations are inconsistent with the medical evidence. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460,

10

462 (6th Cir. 2013) ("The ALJ reasonably discounted Temples' testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

The ALJ also noted the record contained evidence of symptom magnification (Tr. 25). While Plaintiff walked with significant stiffness in his left leg during a functional capacity evaluation ("FCE") in January 2010, the examiner noted that he displayed only a slight limp and normal movement of the knee when he walked across the room for water (Tr. 377). In July of 2011, during a consultative examination, Plaintiff ambulated with a limp, but the examiner noted that he ambulated normally when he was unaware that he was being observed (Tr. 450).

In addition, Plaintiff gave a poor effort during the FCE (Tr. 25, 373-79). The examiner noted that Plaintiff's pain report did not correlate to the degree of muscle guarding and postural deviation exhibited, and Plaintiff's consistency percentage suggested that his test results did not reflect his true physical abilities (Tr. 373). The examiner noted that Plaintiff displayed unsafe exaggeration of weakness and trembling in the left leg when asked to climb three rungs of a ladder (Tr. 377). Plaintiff was also uncooperative during range of motion testing of his hips at the July 2011 consultative examination (Tr. 450). Plaintiff's poor effort reflected negatively on the credibility of his subjective complaints. *See Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 597 (6th Cir. 2005) (noting that the claimant "appeared to put forth little effort in testing which is not thought to be a valid representation of functioning.").

The ALJ also considered that although Plaintiff testified to significant drowsiness as a result of his medications in January 2014, he did not consistently report such a side effect to his treatment providers (Tr. 27, 43, 50). *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665

11

(6th Cir. 2004) ("Although Essary testified that she suffered from dizziness and drowsiness as a result of her medications, Essary's medical records make no indication that Essary reported such side effects to any of her physicians."); *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (alleged medication side effects of drowsiness, nausea, and blurred vision "not documented in the record"). The treatment record shows that Plaintiff reported one of his medications sometimes cause him to be overly sleepy in June 2010, but he denied any side effects at subsequent visits (Tr. 421, 423, 424, 427, 529, 530, 572). The ALJ noted that Plaintiff specifically denied any sedation from his medications in March 2013 (Tr. 27, 580). And Plaintiff again denied any side effects from medication in November 2013, just two months before his testimony at the supplemental hearing (Tr. 27, 594).

The ALJ also found Plaintiff's activities inconsistent with the degree of pain alleged (Tr. 26-27). An ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *See Temples*, 515 F. App'x at 462 ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."). Despite his subjective pain levels of 7 to 8 out of 10, Plaintiff was independent in performing his activities of daily living (Tr. 27, 364-70, 375, 435). Plaintiff reported taking out the trash, feeding and watering his dogs, cleaning out their pens, cooking his own meals, going outside every day, mowing the lawn with breaks, washing the dishes, and vacuuming (Tr. 26-27, 84, 243-52, 476). Plaintiff also engaged in squirrel hunting and raccoon hunting during the period he alleged disability, although he reported difficulty climbing fences (Tr. 27, 87, 435, 476).

12

The ALJ also noted that Plaintiff helped his brother with "bush hogging" on the farm for three days in July 2010 (Tr. 25, 42, 79-80, 386-392). Although not performed on a regular basis, Plaintiff's ability to work on a farm was inconsistent with his testimony that he could only stand for 15 to 20 minutes at a time, sit for 25 minutes, and walk for 20 minutes with the assistance of a big stick (Tr. 54-55). The ALJ noted that Plaintiff reported more limited activities at the second hearing, but found no reason for the decline in his activities as his reported pain level remained the same and his physical examinations were unchanged (Tr. 27).

Finally, the ALJ considered Plaintiff's work history. The ALJ noted that although Plaintiff's back injury occurred in February 2009, he continued working full time until April 2009 (Tr. 27, 221). An ALJ may consider an individual's work during a period of alleged disability. *See Miller v Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1571, 416.929(c)(3), 416.971). Plaintiff did not quit his job due to his impairments and only left his full time job because he was laid off because of lack of work (Tr. 27, 226, 360, 370, 375, 475). *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) ("Although Workman alleges a disability onset date of June 30, 1998, the record indicates that this is the date that Workman's employer laid him off due to economic reasons."). The ALJ acknowledged that Plaintiff otherwise had a good work history, but found that this factor was outweighed by the numerous factors discussed above (Tr. 27, 199-203).

I agree with the Commissioner that Plaintiff has not shown any legal error in the ALJ's rationale or pointed to any evidence that was not considered. I conclude, for the reasons discussed above, that substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints.

13

## 2. The Medical Opinion Evidence.

In assessing Plaintiff's RFC, the ALJ also considered the medical opinion evidence in accordance with the regulations (Tr. 28-29).  *See* 20 C.F.R. § 404.1527(b) ("In deciding if you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.").  The ALJ discussed the medical opinions of the Plaintiff's treating physicians, Dr. Hazlewood and Evelyn Cintron, M.D.; the medical opinions of one-time examining physicians Donita Keown, M.D., and Dawn Brandau, Ph.D.; and the medical opinions of the non-examining state agency medical and psychological consultants (Tr. 28-29).  Pursuant to Social Security rules and regulations, the ALJ weighed each opinion and gave reasons for the weight given (Tr. 28-29).

Plaintiff asserts the ALJ failed to properly weigh the opinions of his treating physicians, Dr. Hazlewood and Dr. Cintron (Doc.19, Plaintiff's Brief at 21-22).  Plaintiff argues these doctors' opinions should have been given great weight, but Plaintiff does not challenge any of the reasons the ALJ articulated for discounting the doctors' opinions.

The weight afforded a physician's opinion regarding the nature and severity of a claimant's impairments depends upon the examining relationship or treating relationship the physician may have had with the claimant, the evidence the physician presents to support his or her opinion, how consistent the physician's opinion is with the record as a whole, the physician's specialty, and other factors.  *See* 20 C.F.R. § 404.1527(c).  Generally, a treating physician's opinion is entitled to more weight and an ALJ must give good reasons for rejecting a treating physician's opinion.  *See* 20 C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004).  The Sixth Circuit, however, "has consistently stated that [the

14

Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle*, 998 F.2d at 347-48; *see* 20 C.F.R. § 404.1527(c); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 529-30 (6th Cir. 1997).

Opinions on some issues, such as whether the claimant is disabled, whether a claimant meets a Listing, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); <u>see</u> Social Security Ruling (SSR) 96-5p.[3] Opinions on issues reserved for the Commissioner "even when offered by a treating source, . . . can never be entitled to controlling weight or be given special significance." SSR 96-5p. Although physicians' statements about what a claimant can do are relevant evidence, they are not determinative. The ALJ has the responsibility of assessing a claimant's RFC and determining whether a claimant meets a Listing. *See* 20 C.F.R. §§ 404.1513(b), 404.1527(d), 404.1545, 404.1546(c); SSR 96-5p.

For reasons that follow, I conclude the ALJ properly considered the opinions of these physicians and articulated good reasons for the weight given. First, the ALJ considered the February 2012 medical source statement of Dr. Hazlewood (Tr. 28, 525-58).[4] The ALJ gave

---

[3] SSR 96-5p (<http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html>)

[4] After the ALJ issued a decision, Plaintiff submitted a medical source statement completed by Dr. Hazlewood in January 2014 (Tr. 610-14). The Appeals Council considered this evidence but found no reasons to review the ALJ's decision (Tr. 1-10). Plaintiff does not make any arguments with respect to this opinion.

great weight to most of the limitations assessed by Dr. Hazlewood, but gave no weight to the limitations that were inconsistent with the record (Tr. 28). *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391-92 (6th Cir. 2004) ("[W]e find it significant that the administrative law judge did not reject wholesale the conclusions of Dr. Sonke and indeed incorporated [some of] Dr. Sonke's conclusions . . . ."). The ALJ gave great weight to the doctor's opinion that Plaintiff could lift or carry up to 50 pounds occasionally and 20 pounds frequently; sit, stand, and walk without limitation; push or pull without limitation; and occasionally perform postural activities (Tr. 28, 525-28). The ALJ also gave great weight to Dr. Hazlewood's opinion that Plaintiff needed to alternate positions every hour and should avoid hazards secondary to his medications (Tr. 24, 526-528). The ALJ found these opinions consistent with the record, including the clinical and diagnostic findings, conservative treatment measures, and Plaintiff's activities (Tr. 28). The more consistent an opinion is with the record as a whole, the more weight that will be given to that opinion. 20 C.F.R. § 404.1527(c)(4). The ALJ also noted that Dr. Hazlewood is a specialist who had a long treatment history with Plaintiff (Tr. 28). An ALJ may consider a doctor's medical specialty and expertise, *see* 20 C.F.R. § 404.1527(c)(3) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"), and the length of the treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i) ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Consistent with these opinions, the ALJ found that Plaintiff could perform medium work so long as he avoided all work hazards and had the flexibility to alternate positions every hour (Tr. 24).

The ALJ also considered Dr. Hazlewood's opinion that Plaintiff would likely be absent from work about three times a month, but found no support in the record for this opinion (Tr. 28, 526). An ALJ may discredit an opinion that is not supported by the record. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("The ALJ reasoned that Dr. Lin's conclusions are 'not well supported by the overall evidence of record and are inconsistent with other medical evidence of record.' This is a specific reason for not affording controlling weight to Dr. Lin."). Contrary to this limitation, Dr. Hazlewood's treatment notes indicated that Plaintiff could work a regular job with no permanent restrictions (Tr. 25, 427-31). I conclude the ALJ properly discounted this limitation. *See Sullivan v. Comm'r of Soc. Sec.*, No. 14-5337, 2014 WL 6997487, at *4 (6th Cir. Dec. 12, 2014) ("it is proper for an ALJ to give a treating physician's opinion less-than-controlling weight where a claimant is 'unable to direct this court to any portion of the [treating physician's] records which support' the treating physician's ultimate opinion.").

The ALJ also considered the April 2012 medical source statement completed by Plaintiff's primary care doctor, Dr. Cintron, but gave this opinion little weight (Tr. 28, 539-42). Dr. Cintron opined that Plaintiff could lift and carry no more than 10 pounds; stand and walk for less than 2 hours in an 8-hour workday; and sit for only about 4 hours in an 8-hour workday (Tr. 539). Dr. Cintron also opined that Plaintiff needed unscheduled work breaks every 1 to 2 hours and needed to elevate his legs with prolonged sitting (Tr. 540). The ALJ acknowledged that Dr. Cintron was a treating doctor since November 2010, but found that her opinion was inconsistent with her own treatment notes and the record as a whole (Tr. 28). As the Commissioner notes, Dr. Cintron indicated that Plaintiff's left leg motor strength was only a 2 to 3 out of 5, her

17

treatment records did not corroborate such a finding (Tr. 28, 540). Rather, Dr. Cintron's

treatment notes documented little other than Plaintiff's subjective complaints and medication

regimen (Tr. 441-47, 570-71, 599-605). Dr. Cintron's statement was also inconsistent with

testing done by Dr. Hazlewood and Dr. Keown, which repeatedly showed motor strength of 4 to

5 out of 5 in the lower extremities without focal weakness (Tr. 28, 421, 424, 425, 427, 428, 429,

431, 433, 436, 451, 509, 572, 584, 585, 587, 590, 594, ). An ALJ may discredit a treating

doctor's opinion that is inconsistent with other evidence or is based on insufficient clinical

findings. *See Curler*, 561 F. App'x at 472 (citing *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640,

652 (6th Cir.2006) ("[T]his court has consistently stated that the Secretary is not bound by the

treating physician's opinions, and that such opinions receive great weight only if they are

supported by sufficient clinical findings and are consistent with the evidence").

The ALJ also noted that Dr. Cintron was Plaintiff's primary care doctor and not a

specialist (Tr. 28). An ALJ may give less weight to a doctor's opinion on areas that are outside

of his or her area of specialty. *See* 20 C.F.R. § 404.1527(e). As Dr. Hazlewood and Dr. Cintron

gave significantly different opinions regarding Plaintiff's limitations, the ALJ properly

considered the opinion evidence in light of the record as a whole and gave greater weight to Dr.

Hazlewood's opinion as a treating source and a specialist (Tr. 28). An "ALJ is authorized to

weigh conflicting medical evidence, taking into account, among other factors, an expert's

'medical specialty and expertise.'" *See also Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583,

588 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(e)). *See also Poe v. Comm'r of Soc. Sec.*, 342

F. App'x 149, 157 n.4 (6th Cir. 2009) ("Furthermore, although the ALJ did not give Dr. Boyd's

opinion controlling weight, the ALJ's residual functional capacity finding did incorporate the

18

limitations that were consistent with the other evidence of record, including the findings of Poe's other treating physicians.").

I conclude substantial evidence in the record supports the ALJ's evaluation of the opinion evidence (Tr. 28-29). When, as here, the medical opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the ALJ. *See* 20 C.F.R. § 404.1527 (e)(2).

### 3. Plaintiff's Mental Impairments.

Plaintiff argues that the ALJ failed to give complete restrictions to account for his anxiety and should have limited him to less than frequent interaction with others (Doc. 19, Plaintiff's Brief at 22-24). For reasons that follow, I conclude the ALJ properly considered the evidence related to Plaintiff's mental impairments and accounted for his credible limitations in the RFC finding (Tr. 24).

The ALJ noted Plaintiff first reported anxiety symptoms in March 2010, when his wife was in the hospital for heart surgery and he expected a hospital bill of $80,000 (Tr. 25, 413). Plaintiff's primary care doctors prescribed Xanax and continued to refill the prescription due to his reports of "trouble with [his] nerves" (Tr. 25, 412-13, 441-43). Subsequent treatment notes contain occasional reports of anxiety, panic attacks, and agitation, but in May 2013 Plaintiff stated that he was only a little depressed (Tr. 26, 592, 599-602). Despite his alleged symptoms, Plaintiff did not receive any counseling or mental health services outside of his primary care doctors (Tr. 26).

The ALJ noted that during a psychological evaluation in August 2011, Plaintiff reported passive suicidal ideation and using Xanax for sleep (Tr. 26, 472-77). He reported his medication

helped with symptoms of depression and irritability (Tr. 26, 474). On a mental status examination Plaintiff performed all six serial three subtractions correctly and recalled one of three items after 10 minutes (Tr. 26, 475). Dr. Brandau assigned a global assessment of functioning score of 55-60, suggesting moderate symptoms (Tr. 26, 477). She opined that Plaintiff had mild to moderate impairment in social functioning due to his reports that he does not like to be in public (Tr. 479).

As the Commissioner argues, while Plaintiff reported that he did not like to be out in public, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). As discussed above, the ALJ found that Plaintiff's subjective complaints were not entirely credible (Tr. 26). After considering all the evidence, the ALJ properly determined that Plaintiff could tolerate frequent interpersonal contact with coworkers and the public but should avoid any production rate pace as found on an assembly line (Tr. 26).

Even if the ALJ had limited Plaintiff to occasional interaction with coworkers and the public, such a limitation would not prevent him from performing a significant number of jobs in the national economy. The vocational expert testified that the jobs cited involved a certain degree of supervision (Tr. 65-67). The vocational expert explained that a limitation to occasional interpersonal contact would not have a major impact on the jobs cited unless Plaintiff could not tolerate frequent supervision (Tr. 67). Here the record does not support the conclusion that Plaintiff had any difficulty interacting with supervisors. As the Commissioner points out,

Plaintiff alleged anxiety symptoms in public, but he reported no problems getting along with authority figures and had never been fired for problems in getting along with others, stating that he had excellent performance skills (Tr. 251, 266, 273). Plaintiff also had no problems interacting with his treatment providers, and he spent time with his family and friends and attended church once or twice a week (Tr. 59-60, 249, 271, 475). I therefore conclude substantial evidence supports the ALJ's evaluation of Plaintiff's mental impairment.

I conclude the ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of resolving any conflicts in the evidence. See Perales, 402 U.S. at 399. It is not the function of this Court to reweigh the evidence and substitute its own judgment for the Commissioner's merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Here substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled.

<u>Conclusion</u>

Having carefully reviewed the entire administrative record and the briefs of the parties

filed in support of their respective motions, I conclude there is substantial evidence in the record

to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor

remand is warranted on these facts. Accordingly, I RECOMMEND:

(1)  The plaintiff's motion for judgment on the record (Doc. 18) be DENIED.

(2)  The defendant's motion for summary judgment (Doc. 20) be GRANTED.

(3)  The case be DISMISSED. [5]

S /William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[5]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).